JS 44   (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Main Street America Assurance Company

**DEFENDANTS**

Frier Plastering & Stucco, Inc., FSD CM, LLC
East Norris Street Partners, L.P., and GE East Norris Street Assoc.

**(b)** County of Residence of First Listed Plaintiff   Duval, FL
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Philadelphia, PA
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Bryan M. Shay (Post & Schell, P.C.)
Four Penn Ctr., 13th Fl., 1600 John F. Kennedy Blvd.
Philadelphia, PA  19103  (215) 587-1182

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government
Plaintiff
- ☐ 3  Federal Question
*(U.S. Government Not a Party)*
- ☐ 2  U.S. Government
Defendant
- ☒ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | ☐ 893 Environmental Matters |
| | Medical Malpractice | | Leave Act | | ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | Agency Decision |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | State Statutes |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC 1332; 28 USC 2201
Brief description of cause:
Declaratory judgment action involving an insurance dispute between parties of diverse citizenship

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
08/21/2018

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

JS 44 Reverse  (Rev. 06/17)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **(b)**   **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **(c)**   **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**   **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**   **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**   **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**   **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.**   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 4601 Touchton Road East, Suite 3400, Jacksonville, FL  32246 _____

Address of Defendant: _____ See attached list _____

Place of Accident, Incident or Transaction: _____ Philadelphia, PA _____

---

**RELATED CASE, IF ANY:**

Case Number: _____ N/A _____     Judge: _____ N/A _____     Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?     Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?     Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?     Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?     Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _____ 08/21/2018 _____   _____ *Attorney-at-Law / Pro Se Plaintiff* _____   _____ 205953 _____
                                                                                          *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.**   **Federal Question Cases:**

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☐ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
    *(Please specify): _____*

**B.**   **Diversity Jurisdiction Cases:**

- ☑ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify): _____*
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
    *(Please specify): _____*

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Bryan M. Shay, Esquire _____, counsel of record *or pro se plaintiff, do hereby certify:*

- ☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

- ☑ Relief other than monetary damages is sought.

DATE: _____ 08/21/2018 _____   _____ *Attorney-at-Law / Pro Se Plaintiff* _____   _____ 205953 _____
                                                                                          *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

## ATTACHMENT TO DESIGNATION FORM

**ADDRESSES OF DEFENDANTS:**

**FRIEL PLASTERING & STUCCO, INC.**
**30 Ralston Avenue**
**Havertown, PA   19083**

**FSD CM, LLC D/B/A, T/A DULING CONSTRUCTION MANAGEMENT**
**829 North 26th Street**
**Philadelphia, PA   19130**

**EAST NORRIS STREET PARTNERS, L.P.**
**Two Liberty Place**
**50 South 16th Street, 22nd Floor**
**Philadelphia, PA   19102**

**GE EAST NORRIS STREET ASSOCIATES, LLC**
**Two Liberty Place**
**50 South 16th Street, 22nd Floor**
**Philadelphia, PA   19102**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

## CASE MANAGEMENT TRACK DESIGNATION FORM

MAIN STREET AMERICA ASSURANCE COMPANY  :         CIVIL ACTION

            v.
FRIEL PLASTERING & STUCCO, INC., ET AL.  :

                         :           NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.         ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
     and Human Services denying plaintiff Social Security Benefits.           ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
     exposure to asbestos.            ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
     commonly referred to as complex and that need special or intense management by
     the court.  (See reverse side of this form for a detailed explanation of special
     management cases.)            ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.      ( x )

8/21/18
~~8/20/18~~

| Date | Attorney-at-law | PLAINTIFF
Attorney for |
|---|---|---|
| (215) 587-1182 | (215) 320-4876 | bshay@postschell.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**Civil Justice Expense and Delay Reduction Plan**
**Section 1:03 - Assignment to a Management Track**

(a)   The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)   In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management.  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)   The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)   Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)   Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

**SPECIAL MANAGEMENT CASE ASSIGNMENTS**
**(See §1.02 (e) Management Track Definitions of the**
**Civil Justice Expense and Delay Reduction Plan)**

  Special Management cases will usually include that class of cases commonly referred to as "complex litigation"  as that term has been used in the Manuals for Complex Litigation.  The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985.  This term is intended to include cases that present unusual problems and require extraordinary treatment.  See §0.1 of the first manual.  Cases may require special or intense management by the court due to one or more of the following factors:  (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition.  It may include two or more related cases.  Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues.  See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MAIN STREET AMERICA ASSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION |
| FRIEL PLASTERING & STUCCO, INC.; FSD CM, LLC d/b/a, t/a DULING CONSTRUCTION MANAGEMENT; EAST NORRIS STREET PARTNERS, L.P.; and GE EAST NORRIS STREET ASSOCIATES, LLC, | ) ) ) ) ) ) ) ) | NO. _____ |
| Defendants. | ) | |

**FED. R. CIV. P. 7.1 CORPORATE DISCLOSURE STATEMENT OF
PLAINTIFF MAIN STREET AMERICA ASSURANCE COMPANY**

The non-governmental corporate party, Plaintiff Main Street America Assurance Company, is owned by Main Street America Financial Corporation. No publicly-held corporation owns any of the common stock of Plaintiff Main Street America Assurance Company.

Dated: 8/21/18

POST & SCHELL, P.C.

By

BRYAN M. SHAY, ESQ.
PA ID NO. 205953
Four Penn Center, 13th Floor
1600 John F Kennedy Blvd.
Philadelphia, PA 19103
Phone: 215-587-1182
Facsimile: 215-320-4876
*Attorneys for Plaintiff Main Street America
Assurance Company*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **MAIN STREET AMERICA ASSURANCE COMPANY,** | ) | |
| 4601 Touchton Road East, Suite 3400, Jacksonville, Florida 32246 | ) ) | |
|  | ) | **CIVIL ACTION** |
| **Plaintiff,** | ) | |
| **v.** | ) | **NO. _____** |
|  | ) | |
| **FRIEL PLASTERING & STUCCO, INC.,** | ) | |
| 30 Ralston Avenue, Havertown, PA 19083 | ) ) | |
|  | ) | |
| **and** | ) | |
|  | ) | |
| **FSD CM, LLC d/b/a, t/a DULING CONSTRUCTION MANAGEMENT,** | ) ) | |
| 829 North 26th Street Philadelphia, PA 19130 | ) ) | |
|  | ) | |
| **and** | ) | |
|  | ) | |
| **EAST NORRIS STREET PARTNERS, L.P.,** | ) | |
| Two Liberty Place 50 South 16th Street, 22nd Floor Philadelphia, PA 19102 | ) ) ) | |
|  | ) | |
| **and** | ) | |
|  | ) | |
| **GE EAST NORRIS STREET ASSOCIATES, LLC,** | ) ) | |
| Two Liberty Place 50 South 16th Street, 22nd Floor Philadelphia, PA 19102 | ) ) ) | |
|  | ) | |
|  | ) | |
| **Defendants.** | ) | |

## <u>COMPLAINT FOR DECLARATORY JUDGMENT</u>

Plaintiff Main Street America Assurance Company ("Main Street"), by and through its undersigned counsel, hereby files this Complaint seeking declaratory relief, and avers as follows:

## PARTIES

1.      Main Street is a corporation organized and existing under the laws of the state of Florida, and has its principal place of business at 4601 Touchton Road East, Suite 3400, Jacksonville, Florida 32246.

2.      Upon information and belief, defendant Friel Plastering & Stucco, Inc. ("Friel") is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, and has its principal place of business at 30 Ralston Avenue, Pennsylvania 18072.

3.      Upon information and belief, defendant FSD CM, LLC d/b/a Duling Construction Management ("Duling") is a limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania, and has its principal place of business at 829 North 26th Street, Philadelphia, Pennsylvania 19130.

4.      Upon information and belief, all of the members of Duling are citizens of the Commonwealth of Pennsylvania.

5.      Upon information and belief, defendant East Norris Street Partners, L.P. ("Norris Partners") is a limited partnership organized and existing under the laws of the Commonwealth of Pennsylvania, and has its principal place of business at Two Liberty Place, 50 South 16th Street, 22nd Floor, Philadelphia, Pennsylvania 19102.

6.      Upon information and belief, all of the partners of Norris Partners are citizens of the Commonwealth of Pennsylvania.

7.      Upon information and belief, defendant GE East Norris Street Associates, LLC ("Norris Associates") is a limited liability company organized and existing under the laws of the

Commonwealth of Pennsylvania, and has its principal place of business at Two Liberty Place, 50 South 16th Street, 22nd Floor, Philadelphia, Pennsylvania 19102.

8.      Upon information and belief, all of the members of Norris Associates are citizens of the Commonwealth of Pennsylvania.

## JURISDICTION AND VENUE

9.      Main Street hereby restates and incorporates by reference the averments of the preceding Paragraphs, as though same were set forth at length herein.

10.      This Court has jurisdiction over this matter under the Declaratory Judgment Act, 28 U.S.C. § 2201; and under 28 U.S.C. § 1332, as the citizenship of the parties is diverse and the amount in controversy exceeds $75,000, as set forth herein.

11.      Venue is proper in the United States District Court for the Eastern District of Pennsylvania because the contract at issue in the instant litigation was entered into in the Eastern District of Pennsylvania.

## THE POLICY

12.      Main Street hereby restates and incorporates by reference the averments of the preceding Paragraphs, as though same were set forth at length herein.

13.      Main Street issued three policies of businessowners' insurance (collectively, the "Policies") to "Friel Plastering & Stucco, Inc.," all of which bore Main Street Policy Number MPU5515L, and which had effective dates of January 1, 2014 to January 1, 2015 (the "2014 Policy"); January 1, 2015 to January 1, 2016 (the "2015 Policy"); and January 1, 2016 to January 1, 2017 (the "2016 Policy").

14.      Copies of the relevant 2014 Policy, the 2015 Policy, and 2016 Policy documents are attached hereto as Exhibits "1" through "3," respectively.

15.     Friel is the named insured on the Policies. *See* Ex. 1 at 2014 POLICY 02; Ex. 2 at 2015 POLICY 05; and Ex. 3 at 2016 POLICY 09.

16.     Duling, Norris Partners, and Norris Associates are not listed as named insureds on the Policies. *See id.*

17.     Subject to the terms, conditions, and exclusions in the Policies, the Policies provided, *inter alia*, a Liability and Medical Expenses Policy Limit of $1,000,000; a Products/Completed Operations Aggregate Policy Limit of $2,000,000; and a General Aggregate Policy Limit of $2,000,000. *See id.*

18.     The Declarations Pages classify the named insured—Friel—as a "Corporation." *See id.*

19.     The Policies thus define "Insured," in pertinent part, as:

## C. Who Is An Insured

### 1. If you are designated in the Declarations as:

d.  An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

*See* Ex. 1 at 2014 POLICY 17.

20.     The Policies further provide that:

4

2. Each of the following is also an insured:

a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

*       *       *

(2) "Property damage" to property:

(a) Owned, occupied or used by,

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

*See id.*

21.     The Policies provide Businessowners Liability Coverage through Policy Form BPM P 2 (12/07). *See* Ex. 1 at 2014 POLICY 08.

22.     The insuring agreement for Coverage A.1 – Business Liability provides, in pertinent part, as follows:

### A. Coverages

#### 1. Business Liability

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury", to which this insurance does not apply. We may at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

   (1) The amount we will pay for damages is limited as described in Paragraph **D.** – Liability And Medical Expenses Limits Of Insurance in Section **II** – Liability; and

   (2) Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements or medical expenses.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Paragraph f. Coverage Extension – Supplementary Payments.

*See id.*

23.   The Policies' liability coverage further provides that:

b. This insurance applies:

   (1) To "bodily injury" and "property damage" only if:

6

(a) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(b) The "bodily injury" or "property damage" occurs during the policy period; and

(c) Prior to the policy period, no insured listed under Paragraph **C.1.** Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known before the policy period.

(2) To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

*See id.*

24.    The Policies further provide that:

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **C.1.** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **C.1.** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

7

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

*See id.* at 2014 POLICY 08-09.

25.     The Policies define "Occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."   *See id.* at 2014 POLICY 21.

26.     The Policies define "Property Damage," in relevant part, as follows:

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

*See id.*

27.     The Policies exclude coverage for "Contractual Liability," such that there is no coverage under the Policies for:

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

*See id.* at 2014 POLICY 10.

28.    The Policies define "Insured Contract," in pertinent part, as follows:

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

9

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

*See id.* at 2014 POLICY 57.

29.     The Policies also exclude coverage for damage to certain classes of property, such that there is no coverage under the Policies for "property damage" to:

(5) That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

\*      \*      \*

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

*See id.* at 2014 POLICY 13-14.

30.    The Policies define "products-completed operations hazard," in pertinent part, as

follows:

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at the job site has been put to its intended use by any other person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

The "bodily injury" or "property damage" must occur away from premises you own or rent, unless your business includes the selling, handling or distribution of "your product" for consumption on premises you own or rent.

**b.** Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

(2) The existence of tools, uninstalled equipment or abandoned or unused materials.

11

*See id.* at 2014 POLICY 21-22.

    31.    The Policies define "your work" and "your product" as follows:

> **21.** "Your product":
>
>   **a.** Means:
>
>     **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
>
>       **(a)** You;
>
>       **(b)** Others trading under your name; or
>
>       **(c)** A person or organization whose business or assets you have acquired; and
>
>     **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.
>
>   **b.** Includes:
>
>     **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and
>
>     **(2)** The providing of or failure to provide warnings or instructions.
>
>     **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.
>
> **22.** "Your work":
>
>   **a.** Means:
>
>     **(1)** Work or operations performed by you or on your behalf; and
>
>     **(2)** Materials, parts or equipment furnished in connection with such work or operations.
>
>   **b.** Includes:
>
>     **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and
>
>     **(2)** The providing of or failure to provide warnings or instructions.

*See id.* at 2014 POLICY 22-23.

    32.    The Policies also exclude coverage for "property damage" to "your product" and "your work," such that there is no coverage under the Policies for:

**l. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**m. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

*See id.* at 2014 POLICY 14.

33.      The Policies also exclude coverage for property damage to "impaired property,"

such that there is no coverage for:

**n. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

*See id.*

34.      The Policies define the term "impaired property" as follows:

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   (1) The repair, replacement, adjustment or removal of "your product" or "your work"; or

   (2) Your fulfilling the terms of the contract or agreement.

*See id.* at 2014 POLICY 20.

35.     The Policies also contain an exclusion for liability arising from "bodily injury" or

"property damage" that is caused by fungi or bacteria, such that there is no coverage for:

The following provisions are added to **Section II — Liability:**

A. The following exclusion is added to Paragraph **B.1., Exclusions — Applicable To Business Liability Coverage:**

   t. **Fungi Or Bacteria**

   (1) "Bodily injury", "property damage" or "personal and advertising injury" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

   (2) Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

   This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

14

*See id.* at 2014 POLICY 56.

36.     The Fungi or Bacteria Exclusion defines "fungi" as "any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or by-products produced or released by fungi." *Id.*

37.     The Policies also contain an exclusion for "Exterior Insulation and Finish Systems," which provides that there will be no coverage for:

> **Section II – Liability** is amended as follows:
>
> A.  This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:
>
> 1.  The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or
>
> 2.  "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

*See id.* at 2014 POLICY 40.

38.     The Policies define the term "Exterior insulation and insulation system" as follows:

**B.** The following definition is added to the **Definitions** Section:

"Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

1. A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;

2. The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

3. A reinforced or unreinforced base coat;

4. A finish coat providing surface texture to which color may be added; and

5. Any flashing, caulking or sealant used with the system for any purpose.

*See id.*

39.     The Policies also include the following parties as additional "insureds" under the

Policy per the terms of the Contractors Extension Endorsement (Form BPM 3105 (12/07)):

**A. Additional Insureds**

Each of the following is added to Paragraph **C. Who Is An Insured** of BPM P 2 — Section II — Liability but only as specifically described by the following:

1. Any person(s) or organization(s) for whom you are performing operations is also an additional insured, when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage", "personal and advertising injury" caused in whole or part, by:

a. Your acts or omissions; or

b. The acts or omissions of those acting on your behalf;

In the performance of your ongoing operations or "your work" included within the "products-completed operations" hazard for the additional insured at the location designated and described in the written contract or agreement.

*See id.* at 2014 POLICY 29.

40.     However, the Contractors Extension Endorsement does limit the coverage for the additional insured parties as follows:

> This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying services, including:
>
> a. The preparing , approving, or failure to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or
>
> b. Supervisory, inspection, architectural or engineering activities.

*Id.*

41.     The Contractors Extension Endorsement also provides the manner in which multiple insurance policies will interact:

> C. The following is added to Paragraph H. Other Insurance of BPM P 3 – Section III - Common Policy Conditions:
>
> Primary Additional Insured – If a written contract or agreement or permit requires this insurance to be primary for any person or organization with whom you agree to include in paragraph C. Who Is An Insured of BPM P 2 – Section II – Liability, this Other Insurance provision is applicable. This insurance is primary. This insurance is also non-contributory which means we will not seek contribution from other insurance available to the person or organization with whom you agree to include in Who Is An Insured.

*Id.* at 2014 POLICY 30.

42.     The Policies also contain a provision permitting Main Street to seek reimbursement from its insured for defense costs it expends on behalf of an insured in the event it is determined that none of the claims in the Underlying Action are covered:

The following is added to **Section II — Liability** Paragraph **A. Coverages:**

If we initially defend an insured or pay for an insured's defense but later determine that none of the claims, for which we provided a defense or defense costs, are covered under this insurance, we have the right to reimbursement for the defense costs we have incurred.

The right to reimbursement under this provision will only apply to the costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense or the payment of defense costs and to seek reimbursement for defense costs.

*Id.* at 2014 POLICY 58.

## THE UNDERLYING ACTION

43.    Main Street hereby restates and incorporates by reference the averments of the preceding Paragraphs, as though same were set forth at length herein.

44.    The Norris Point Homeowners Association (the "Association"), along with several individuals who are alleged to be unit members of the planned community located at Norris Point, commenced a lawsuit against, *inter alia*, Friel, Duling, Norris Partners, and Norris Associates by filing a Complaint in the Court of Common Pleas of Philadelphia County on or about July 5, 2016 (the "Underlying Action").   A copy of this Complaint—which was docketed at July Term, 2016, No. 00154—is included as Exhibit "4."

45.    According to the Complaint in the Underlying Action, Norris Point is a planned community consisting of ten single-family homes located at 2145-55 E. Norris Street and 2001-2005 Trenton Avenue in Philadelphia, Pennsylvania. *See* Ex. 4 at ¶ 19.

46.    According to the Underlying Action, Norris Partners was the declarant and developer of the planned community, and it was responsible for the design and construction of Norris Point. *Id.* at ¶ 20.

47.    It is alleged in the Underlying Action that Duling and Friel were retained to provide stucco installation and maintenance services. *Id.* at ¶ 50.

48.    The Complaint alleges that the unit owners have discovered "leaks, water infiltration issues, and other construction defects in the Units." *Id.* at ¶ 42.

49.    Upon information and belief, these alleged leaks and water infiltration issues were first discovered in 2013.

50.    It is alleged in the Underlying Action that "[a] major issue at the Project has been leaks through the stucco facades and into the Units themselves." *Id.* at ¶ 43.

51.    The Complaint further alleges water intrusion that occurred in the roofs and through the foundations of the units. *Id.* at ¶ 58.

52.    The Complaint alleges that these leaks have caused "structural damage and damage to property other than the stucco such as interior drywall, hardwood floors, and ceilings." *Id.* at ¶ 44.

53.    The plaintiffs in the Underlying Action allege that upon receiving these claims of water damage, Norris Partners removed the stucco from four units and discovered that the stucco system had not been properly installed. *Id.* at ¶¶ 46-49.

54.    According to the Complaint, "Duling's, Freil's [*sic*], and Pro-Build's refusal to install a stucco system installed according to the applicable building code, industry standards, and/or manufactures [*sic*] specifications has caused damages to the Association and the Unit Owners." *Id.* at ¶ 57.

55.    The Complaint asserts the same allegations against Norris Partners and Norris Associates. *Id.* at ¶ 56.

56.    The Complaint states that Norris Partners undertook to repair the damaged property, but that it did not perform the repair work in a proper or appropriate manner. *Id.* at ¶¶ 53-54.; *id.* at ¶ 60.

57.    The Complaint further alleges that the Association has ordered Norris Partners to stop all repair work in order to prevent further damage to the project. *Id.* at ¶ 55.

58.     The Lawsuit filed by the Association and several of the unit owners contains nine counts:[1]

(a)     Count I, which is entitled "Breach of Contract," is alleged against Norris Partners and Norris Associates only; this Count claims that the faulty construction and failure to honor warranties related to the units was a breach of the contract between the Association and Norris Partners/Norris Associates. *See id.* at ¶¶ 61-65.

(b)     Count II, which is entitled "Breach of Express Warranty," is alleged against Norris Partners and Norris Associates only; this Count claims that the faulty construction and resulting water damage was a breach of Norris Partners and Norris Associates' express warranties against certain defects and deficiencies in the construction of the project. *See id.* at ¶¶ 66-69.

(c)     Count III, which is entitled "Breach of Implied Warranty," is alleged against Norris Partners and Norris Associates only; this Count claims that the faulty construction and resulting water damage was a breach of Norris Partners and Norris Associates' implied warranties that the units were constructed in a good and workmanlike manner, and were habitable. *See id.* at ¶¶ 70-73.

(d)     Count IV, which is entitled "Breach of Statutory Warranty," is alleged against Norris Partners and Norris Associates only; this Count claims that the faulty construction and resulting water damage was a breach of Norris Partners and Norris Associates' statutorily-required warranties against structural defects. *See id.* at ¶¶ 74-79.

(e)     The first Count V, which is entitled "Breach of 68 Pa. C.S.A. § 5414," is alleged against Norris Partners only; this Count claims that Norris Partners violated Pennsylvania law by failing to file a certificate from an engineer or architect stating that the structural components and common mechanical systems had been substantially completed. *See id.* at ¶¶ 80-85.

(f)     The Second Count V, which is entitled "Negligent Misrepresentation," is alleged against Norris Partners and D3 (the co-developer, manager, and marketer of the project) only; this Count claims that these defendants made false statements in the Offering Statement, Declaration, and Agreement. *See id.* at ¶¶ 86-91.

(g)     The first Count VI, which is entitled "Violation of the Unfair Trade Practices and Consumer Protection Law," is alleged against Norris Partners and D3 (the co-developer, manager, and marketer of the project)

---

[1] The Complaint lists Counts I through VII, but there are two "Count Vs" and two "Count VIs."

only; this Count claims that these defendants made false statements and engaged in other deceptive conduct in the course of selling each of the units. *See id.* at ¶¶ 92-95.

(h)   The second Count VI, which is entitled "Breach of Contract," is alleged against Norris Partners only; this Count claims that the structural defects, failure to repair all defective construction, and failure to provide each unit owner with a certificate of completion for the project breached the Agreements of Sale. *See id.* at ¶¶ 96-99.

(i)   Count VII, which is entitled "Negligence," is alleged against several defendants (including Norris Partners, Duling, and Friel); this Count claims that the faulty construction and resulting water damage was a breach of the defendants' respective duties of due care. Specifically, this Count claims that the defendants "breached their duty of care to the Association and the Unit Owners by failing to install an exterior stucco cladding system, roof system, and foundation system, that was 'leak free,' water tight, installed according to applicable building code, industry standards, and/or construction drawings." It is the plaintiffs' contention that this negligent conduct caused the alleged water damage. *See id.* at ¶¶ 100-104.

59.   In each of their Counts, the plaintiffs in the Lawsuit seek damages in excess of $50,000.

## THE CLAIMS FOR COVERAGE

60.   Main Street hereby restates and incorporates by reference the averments of the preceding Paragraphs, as though same were set forth at length herein.

61.   Following the filing of the Underlying Action, Friel tendered the Underlying Action to Main Street for the purposes of obtaining a defense and indemnity under the Policies.

62.   On or about November 9, 2016, Main Street sent a partial disclaimer and reservation of rights to Friel—Main Street's named insured—regarding the Lawsuit. *See* Exhibit "5."

63.   As set forth in this correspondence, Main Street agreed to assume the defense of Friel subject to a reservation of its rights, and it thereafter appointed counsel on behalf of Friel. *Id.*

64.     In that letter, Main Street alerted Friel to the fact that several exclusions—such as the "Contractual Liability," "Damage To Property," "Damage To Your Work," "Damage To Impaired Property Or Property Not Physically Injured," and "Recall of Products, Work or Impaired Property" exclusions—might preclude coverage for the claims against Friel. *Id.*

65.     The letter further indicated that the exclusions for "Fungi Or Bacteria" and "Exterior Insulation And Finish Systems" might apply to the claims in the Underlying Action. *Id.*

66.     Main Street's letter also alerted Friel to the fact that the Policies allowed Main Street to recover attorneys' fees in the event the claims against Friel were not covered.  *Id.*

67.     Upon information and belief, Friel was insured for businessowners' insurance coverage by Erie Insurance Exchange pursuant to policies that were in effect prior to the inception of the Main Street Policies.

68.     Upon information and belief Erie is providing a defense for Friel in the Lawsuit, and Main Street is splitting the costs of that defense on a 50-50 basis with Erie, subject to Main Street's reservation of rights.

69.     Upon information and belief, Norris Partners and Duling entered into an agreement by which Duling agreed to be the general contractor for the project. *See* Exhibit "6."

70.     Upon information and belief, Duling hired Friel to perform stucco work at the project. *See id.*

71.     Upon information and belief, Duling and Friel subsequently entered into a Subcontract Agreement dated May 24, 2012. *See* Exhibit "7."

72.     Upon information and belief, Friel's initial work on the project was completed in 2012.

73.    On December 28, 2015, Norris Partners entered into a Remediation and Tolling Agreement with, *inter alia*, Friel and Duling.  *See* Exhibit "8."

74.    On March 23, 2016, Duling and Friel entered into a detailed subcontract relating to the removal and reinstallation of the stucco.  *See* Exhibit "9."

75.    This agreement required Friel to maintain insurance to cover its general liability, and that this insurance include Duling and the "Owner" as additional insureds:

> Subcontractor [Friel] shall provide a Certificate of Insurance evidencing these coverage's [*sic*].
>
> The Certificate of Insurance is to name **Duling Construction Management and the Owner as "Additional Insured"** and include a Waiver of Subrogation in favor of Duling Construction Management on all policies.  Certificate is also to indicate that the Subcontractor's policies are primary and non-contributory for Duling Construction Management.  Moreover, it must provide that in the event of any material change in any policy or of the cancellation or nonrenewal of Subcontractor's insurance, fifteen (15) days advance written notice must be given to Duling Construction Management.

*Id.*

76.    This agreement was executed by Denis Friel on behalf of "Friel Plastering & Stucco Inc." on April 7, 2016.  *Id.*

77.    Upon information and belief, Friel performed some of the work required under the subcontract, but was then instructed to stop its work.

78.    On April 10, 2017, and again on May 6, 2017, counsel for Norris Partners and Norris Associates wrote to Friel and its counsel demanding that Friel's insurance carriers agree to provide a defense and indemnity to Norris Partners and Norris Associates—self-described as the "owners" referenced in the subcontract—as additional insureds.  *See* Exhibit "10."

79.    On or about June 29, 2017, Duling tendered the defense of the Underlying Action to Friel pursuant to the same term of the subcontract.  *See* Exhibit "11."

## COUNT I
### (As to Defendant Friel)
### For Declaratory Judgment That Main Street Has No Duty To Defend
### Friel in the Underlying Action

80.     Main Street hereby restates and incorporates by reference the averments of the preceding Paragraphs, as though same were set forth at length herein.

81.     For the reasons set forth herein, an actual, justiciable controversy exists between the parties concerning their respective rights and obligations, if any, under the Policies with respect to the Underlying Action.

82.     Specifically, there is a dispute between Main Street and Friel regarding Main Street's obligation, if any, to provide a defense for Friel in connection with the Underlying Action.

83.     Upon information and belief, Friel believes that it is entitled to a defense from Main Street for the claims asserted against it in the Underlying Action, which Main Street disputes.

84.     Main Street seeks a declaration that it has no duty to defend Friel in connection with the Underlying Action, and that Main Street may therefore withdraw the defense of Friel that Main Street is currently providing in the Underlying Action under reservation of rights.

85.     Pursuant to 28 U.S.C. § 2201, Main Street is entitled to a judicial determination concerning the scope and nature of its rights and other legal relations and obligations, if any, under the Policies with respect to the Underlying Action.

86.     In order to trigger coverage under the Policies, there must be a covered "occurrence." *See* Ex. 1 at 2014 POLICY 08.

87.     The Policies define the term "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 2014 POLICY 21.

88.     Under Pennsylvania law, claims arising out of faulty workmanship are not an "occurrence," and therefore are not covered under a policy of general liability insurance. *See, e.g., Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888 (Pa. 2006); *see also Specialty Surfaces Int'l, Inc. v. Continental Cas. Co.*, 609 F.3d 223 (3d Cir. 2010); *Miller's Capital Ins. Co. v. Gambone*, 941 A.2d 706 (Pa. Super. 2007).

89.     Similarly, allegations of breach of contract or breach of warranty do not set forth a covered "occurrence" under Pennsylvania law. *See, e.g., Erie Ins. Exchange v. Abbott Furnace Co.*, 972 A.2d 1232 (Pa. Super. 2009).

90.     The allegations against Friel in the Underlying Action all arise from alleged faulty workmanship by Friel and/or from water intrusion as a result of said faulty workmanship.

91.     Under Pennsylvania law, the Complaint in the Underlying Action therefore does not allege a covered "occurrence" under the Policies, and there is therefore no coverage under the Policies for Friel with respect to the Underlying Action.

92.     Upon information and belief, the damages alleged in the Underlying Action arise from "property damage" caused by mold, bacteria, or fungi.

93.     Pursuant to the Fungi or Bacteria Exclusion, the Policies therefore do not cover the claims against Friel in the Underlying Action.

94.     Upon information and belief, the Underlying Action seeks damages pursuant to a contractual agreement to which Friel was a party.

95.     Pursuant to Exclusion b., which excludes coverage for "Contractual Liability," the Policies do not cover the claims against Friel in the Underlying Action.

96.     Pursuant to Exclusion k., the Policies do not cover the claims against Friel in the Underlying Action because the "property damage" alleged therein was to the particular part of real property on which Friel or any contractor or subcontractor working directly or indirectly on its behalf was performing operations and arose out of those operations.

97.     Pursuant to Exclusions l. and m., the Policies do not cover the claims against Friel in the Underlying Action because the "property damage" alleged therein was to Friel's "work" and/or "product," as those terms are used in the Policies.

98.     Pursuant to Exclusion n., the Policies do not cover the claims against Friel in the Underlying Action because the "property damage" alleged therein was to "impaired property" or property that has not been physically injured, and arose out of a defect, deficiency, inadequacy or dangerous condition in Friel's "product" and/or "work," and/or arose out of a delay or failure by Friel or anyone acting on its behalf to perform a contract or agreement in accordance with its terms.

99.     The Policies do not cover the claims against Friel in the Underlying Action because the alleged conduct and/or property damage giving rise to the Underlying Action occurred outside the effective period of the Policies.

100.    Under the terms, provisions, definitions, exclusions, conditions, and limitations of the Policies, Main Street therefore has no duty to defend Friel in connection with the Underlying Action.

101.    Accordingly, Main Street is entitled to a declaration pursuant to 28 U.S.C. § 2201 (1) that Main Street has no duty to defend Friel in connection with the Underlying Action; (2)

that Main Street may withdraw the defense it is currently providing to Friel in the Underlying

Action; and (3) that because there is no coverage for the claims against Friel, Main Street is

entitled to reimbursement of the defense costs it has expended in defending Friel in the

Underlying Action.

WHEREFORE, Plaintiff Main Street America Assurance Company respectfully requests

that the Court enter an Order:

(a)     Declaring that Main Street has no duty to defend Friel in the Underlying
        Action;

(b)     Declaring that Main Street may withdraw from the defense of Friel in the
        Underlying Action;

(c)     Awarding Main Street reimbursement of the defense costs it has expended
        in defending Friel in the Underlying Action; and

(d)     Granting Main Street such other and further relief as may be necessary and
        appropriate under the circumstances.

## COUNT II
### (As to Defendant Friel)
### For Declaratory Judgment That Main Street Has No Duty To Indemnify
### Friel in the Underlying Action

102.    Main Street hereby restates and incorporates by reference the averments of the

preceding Paragraphs, as though same were set forth at length herein.

103.    For the reasons set forth above, there are no claims asserted against Friel in the

Underlying Action that are potentially covered under the Policies.

104.    Under the terms, provisions, definitions, exclusions, conditions, and limitations of

the Policies, Main Street therefore has no duty to indemnify Friel for any of the claims in the

Underlying Action, including any cross-claims; and/or in connection with any judgment entered

against Friel or for any settlement in the Underlying Action.

105.    Accordingly, Main Street is entitled to a declaration pursuant to 28 U.S.C. § 2201 that it has no duty to indemnify Friel in connection with any judgment or settlement in the Underlying Action.

WHEREFORE, Plaintiff Main Street America Assurance Company respectfully requests that the Court enter an Order:

    (a)    Declaring that Main Street has no duty to indemnify Friel for any judgment or settlement in the Underlying Action; and

    (b)    Granting Main Street such other and further relief as may be necessary and appropriate under the circumstances.

## COUNT III
**(As to Defendants Duling, Norris Partners, and Norris Associates)**
**For Declaratory Judgment That Main Street Has No Duty To Defend Duling, Norris Partners, or Norris Associates in the Underlying Action**

106.    Main Street hereby restates and incorporates by reference the averments of the preceding Paragraphs, as though same were set forth at length herein.

107.    For the reasons set forth herein, an actual, justiciable controversy exists between the parties concerning their respective rights and obligations, if any, under the Policies with respect to the Underlying Action.

108.    Specifically, there is a dispute between Main Street and Duling, Norris Partners, and Norris Associates regarding Main Street's obligation, if any, to provide a defense for Duling, Norris Partners, and Norris Associates in connection with the Underlying Action.

109.    Upon information and belief, Duling, Norris Partners, and Norris Associates believe that they are additional insureds under the Policies and that they are therefore entitled to a defense from Main Street for the claims asserted against them in the Underlying Action, which Main Street disputes.

110.    Main Street seeks a declaration that it has no duty to defend Duling, Norris Partners, and Norris Associates in connection with the Underlying Action.

111.    Pursuant to 28 U.S.C. § 2201, Main Street is entitled to a judicial determination concerning the scope and nature of its rights and other legal relations and obligations, if any, under the Policies with respect to the Underlying Action.

112.    In order to trigger coverage under the Policies, there must be a covered "occurrence." *See* Ex. 1 at 2014 POLICY 08.

113.    The Policies define the term "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 2014 POLICY 21.

114.    Under Pennsylvania law, claims arising out of faulty workmanship are not an "occurrence," and therefore are not covered under a policy of general liability insurance. *See, e.g., Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888 (Pa. 2006); *see also Specialty Surfaces Int'l, Inc. v. Continental Cas. Co.*, 609 F.3d 223 (3d Cir. 2010); *Miller's Capital Ins. Co. v. Gambone*, 941 A.2d 706 (Pa. Super. 2007).

115.    Similarly, allegations of breach of contract or breach of warranty do not set forth a covered "occurrence" under Pennsylvania law. *See, e.g., Erie Ins. Exchange v. Abbott Furnace Co.*, 972 A.2d 1232 (Pa. Super. 2009).

116.    The allegations against Duling, Norris Partners, and Norris Associates in the Underlying Action all arise from alleged breaches of contract, breaches of warranty, and/or faulty workmanship by Duling, Norris Partners, and Norris Associates; and/or from water intrusion as a result of said faulty workmanship and breaches of contract and/or warranty.

117.    Under Pennsylvania law, the Complaint in the Underlying Action therefore does not allege a covered "occurrence" under the Policies, and there is therefore no coverage under the Policies for Duling, Norris Partners, and/or Norris Associates with respect to the Underlying Action.

118.    Upon information and belief, the damages alleged in the Underlying Action arise from "property damage" caused by mold, bacteria, or fungi.

119.    Pursuant to the Fungi or Bacteria Exclusion, the Policies therefore do not cover the claims against Duling, Norris Partners, and Norris Associates in the Underlying Action.

120.    Upon information and belief, the Underlying Action seeks damages pursuant to a contractual agreement to which Duling, Norris Partners, and Norris Associates were a party.

121.    Pursuant to Exclusion b., which excludes coverage for "Contractual Liability," the Policies do not cover the claims against Duling, Norris Partners, and Norris Associates in the Underlying Action.

122.    Pursuant to Exclusion k., the Policies do not cover the claims against Duling, Norris Partners, and Norris Associates in the Underlying Action because the "property damage" alleged therein was to the particular part of real property on which Duling, Norris Partners, and Norris Associates or any contractor or subcontractor working directly or indirectly on their behalf was performing operations and arose out of those operations.

123.    Pursuant to Exclusions l. and m., the Policies do not cover the claims against Duling, Norris Partners, and Norris Associates in the Underlying Action because the "property damage" alleged therein was to Duling, Norris Partners, and/or Norris Associates' "work" and/or "product," as those terms are used in the Policies.

124.    Pursuant to Exclusion n., the Policies do not cover the claims against Duling, Norris Partners, and Norris Associates in the Underlying Action because the "property damage" alleged therein was to "impaired property" or property that has not been physically injured, and arose out of a defect, deficiency, inadequacy or dangerous condition in Duling, Norris Partners, and/or Norris Associates' "product" and/or "work," and/or arose out of a delay or failure by Duling, Norris Partners, and Norris Associates or anyone acting on their behalf to perform a contract or agreement in accordance with its terms.

125.    The Policies do not cover the claims against Duling, Norris Partners, and Norris Associates in the Underlying Action because the alleged conduct and/or property damage giving rise to the Underlying Action occurred outside the effective period of the Policies.

126.    The claims against Duling, Norris Partners, and Norris Associates are alleged to arise from the independent negligence and/or conduct of those parties; thus, the damages alleged by the plaintiffs in the Underlying Action were thus not caused in whole or in part by Friel's acts or omissions in the performance of its ongoing operations and/or completed operations for Duling, Norris Partners, and/or Norris Associates.

127.    Pursuant to the terms of the Policies, Duling, Norris Partners, and Norris Associates would not qualify as additional insureds for such claims, and Main Street therefore has no duty to defend those parties in the Underlying Action.

128.    Under the terms, provisions, definitions, exclusions, conditions, and limitations of the Policies, Main Street therefore has no duty to defend Duling, Norris Partners, and Norris Associates in connection with the Underlying Action.

129.    Accordingly, Main Street is entitled to a declaration pursuant to 28 U.S.C. § 2201 that Main Street has no duty to defend Duling, Norris Partners, and/or Norris Associates in connection with the Underlying Action.

WHEREFORE, Plaintiff Main Street America Assurance Company respectfully requests that the Court enter an Order:

      (a)    Declaring that Main Street has no duty to defend Duling, Norris Partners, and Norris Associates in the Underlying Action; and

      (b)    Granting Main Street such other and further relief as may be necessary and appropriate under the circumstances.

## COUNT IV
### (As to Defendants Duling, Norris Partners, and Norris Associates)
### For Declaratory Judgment That Main Street Has No Duty To Indemnify Duling, Norris Partners, or Norris Associates in the Underlying Action

130.    Main Street hereby restates and incorporates by reference the averments of the preceding Paragraphs, as though same were set forth at length herein.

131.    For the reasons set forth above, there are no claims asserted against Duling, Norris Partners, and/or Norris Associates in the Underlying Action that are potentially covered under the Policies.

132.    Under the terms, provisions, definitions, exclusions, conditions, and limitations of the Policies, Main Street therefore has no duty to indemnify Duling, Norris Partners, and/or Norris Associates for any of the claims in the Underlying Action, including any cross-claims; and/or in connection with any judgment entered against Duling, Norris Partners, and/or Norris Associates or for any settlement in the Underlying Action.

133.    Accordingly, Main Street is entitled to a declaration pursuant to 28 U.S.C. § 2201 that it has no duty to indemnify Duling, Norris Partners, and/or Norris Associates in connection with any judgment or settlement in the Underlying Action.

WHEREFORE, Plaintiff Main Street America Assurance Company respectfully requests that the Court enter an Order:

(a)     Declaring that Main Street has no duty to indemnify Duling, Norris Partners, and/or Norris Associates for any judgment or settlement in the Underlying Action; and

(b)     Granting Main Street such other and further relief as may be necessary and appropriate under the circumstances.

Dated: 8/21/18

POST & SCHELL, P.C.

By

BRYAN M. SHAY, ESQ.
PA ID NO. 205953
Four Penn Center, 13th Floor
1600 John F Kennedy Blvd.
Philadelphia, PA 19103
Phone: 215-587-1182
Facsimile: 215-320-4876
*Attorneys for Plaintiff Main Street America Assurance Company*

**CERTIFICATE OF SERVICE**

I, Bryan M. Shay, hereby aver that on the date set forth below, I caused a true and correct copy of the foregoing <u>Complaint for Declaratory Judgment</u> to be filed with the Court.  Service of said Complaint was made on all parties in accordance with the applicable Rules of Civil Procedure.

Dated: 8/21/18

POST & SCHELL, P.C.

By _____
BRYAN M. SHAY, ESQ.
PA ID NO. 205953
Four Penn Center, 13th Floor
1600 John F Kennedy Blvd.
Philadelphia, PA  19103
Phone:  215-587-1182
Facsimile: 215-320-4876
*Attorneys for Plaintiff Main Street America*
*Assurance Company*

# EXHIBIT
# 1

The undersigned declares that the attached is a true copy of
MAIN STREET AMERICA ASSURANCE COMPANY Policy Number MPU5515Lᴗ
consisting of a total of 90 pages, attached hereto.

8/1/17 _____ E. T. _____ Operations Manager

Date          Signature                              Title



**THE MAIN STREET AMERICA GROUP**

**Policy Number: MPU5515L**

### BUSINESSOWNERS COMMON DECLARATIONS

## MAIN STREET AMERICA ASSURANCE COMPANY
4601 TOUCHTON ROAD EAST, SUITE 3400, JACKSONVILLE, FL 32245-6000

| | | |
|---|---|---|
| **Item 1.** Named Insured and Mailing Address<br>FRIEL PLASTERING & STUCCO INC<br>30 RALSTON AVE<br>HAVERTOWN PA 19083-2209 | | Agent Name and Address<br>PETERSON INSURANCE SERVICES<br><br>140 WEST EAGLE ROAD<br>HAVERTOWN, PA 19083<br><br>Agent Phone No. (610)446-5059<br>Agent No.   371461 |

**Item 2.** Policy Period    **From:**  01-01-2014  **To:**  01-01-2015

at 12:01 A.M., Standard Time at your mailing address shown above.

**Item 3.** Form of Business:   CORPORATION

**Item 4.** In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

This policy consists of the following coverage parts for which a premium is indicated.  Where no premium is shown, there is no coverage.  This premium may be subject to adjustment.

| COVERAGE | PREMIUM |
|---|---|
| Section I – Property | NOT APPLICABLE |
| Section II – Liability | $      1,517.00 |
| Inland Marine | $        753.00 |
| | |
| Total Policy Premium: | $      2,270.00 |

For Coverages subject to premium audit: Annual Audit Applies

**Item 5.** Form(s) and Endorsement(s) made a part of this policy at time of issue:
**See Schedule of Forms and Endorsements**

Countersigned:

Date: _____  By: _____

Authorized Representative

THIS BUSINESSOWNERS COMMON DECLARATIONS AND SUPPLEMENTAL DECLARATION(S), TOGETHER WITH SECTION III – COMMON POLICY CONDITIONS, COVERAGE PARTS, COVERAGE FORMS AND ENDORSEMENTS, IF ANY, COMPLETE THE ABOVE NUMBERED POLICY.

BPM D 1 1207

CERTIFIED POLICY COPY

8/1/2017 2:31:37 PM

2014 POLICY 02

MAIN STREET AMERICA ASSURANCE COMPANY

**Policy Number: MPU5515L**

| | | |
|---|---|---|
| Named Insured: | FRIEL PLASTERING & STUCCO INC | Effective Date:   01-01-2014 |
| Agent Name: | PETERSON INSURANCE SERVICES | Agent No.   371461 |

## SECTION II – LIABILITY – DECLARATIONS

| COVERAGES | LIMITS |
|---|---|
| Liability & Medical Expenses – Each Occurrence | $ 1,000,000 |
| Personal & Advertising Injury Limit | $ 1,000,000 |
| Damage To Premises Rented To You | $ 500,000 |
| Aggregate Limit- Products-Completed Operations | $ 2,000,000 |
| Aggregate Limit- Except Products-Completed Operations | $ 2,000,000 |
| Medical Expense Limit - Per Person | $ 10,000 |

## LIABILITY -- SCHEDULE

**STATE:**   PA     **TERRITORY:** 007       **PREMISES NO:**   1/1

    **CLASS CODE:**   98449     **DEDUCTIBLE - PROPERTY DAMAGE LIABILITY:**   NONE

    **CLASSIFICATION:**   PLASTERING OR STUCCO -- EXTERIOR -- THREE STORIES OR LESS

| PREMIUM BASIS | EXPOSURE | RATE | ADVANCE PREMIUM |
|---|---|---|---|
| PAYROLL | 30,400 | | $   1,363 |

CERTIFIED POLICY COPY

8/1/2017 2:31:38 PM

2014 POLICY 03

MAIN STREET AMERICA ASSURANCE COMPANY

**Policy Number: MPU5515L**

Named Insured:   FRIEL PLASTERING & STUCCO INC

Agent Name:   PETERSON INSURANCE SERVICES

Effective Date:   01-01-2014

Agent No.   371461

**LIABILITY – OPTIONAL COVERAGES**
**EMPLOYMENT PRACTICES LIABILITY INSURANCE COVERAGE**
**ENDORSEMENT–SUPPLEMENTAL DECLARATIONS**
SEE FORM #      BPM D 3107

**EMPLOYMENT PRACTICES LIABILITY INSURANCE COVERAGE**
**ENDORSEMENT**
SEE FORM #      BPM 3107CW

BPM D LIAB 1207

PAGE 1

CERTIFIED POLICY COPY

8/1/2017 2:31:39 PM

2014 POLICY 04



**THE MAIN STREET AMERICA GROUP**

**Policy Number: MPU5515L**

### SCHEDULE OF FORMS AND ENDORSEMENTS

## MAIN STREET AMERICA ASSURANCE COMPANY

| | | |
|---|---|---|
| Named Insured: | FRIEL PLASTERING & STUCCO INC | Effective Date: 01-01-2014 |
| Agent Name: | PETERSON INSURANCE SERVICES | Agent No. 371461 |

### PROPERTY AND LIABILITY FORMS AND ENDORSEMENTS

```
BPM D 1          12-07   BUSINESSOWNERS COMMON DECLARATIONS
BPM D LIAB       12-07   LIABILITY DECLARATIONS
BPM S FORMS      12-07   SCHEDULE OF FORMS AND ENDORSEMENTS
BPM N 3          12-07   IDENTITY THEFT RESOLUTION SERVICES
BPM N 2          12-07   QUICK REFERENCE GUIDE-SECTION II-III
BPM P 2          12-07   SECTION II - LIABILITY COVERAGE FORM
BPM P 3          12-07   SECTION III - COMMON POLICY CONDITIONS

BPM 2102         12-07   IDENTITY THEFT EXPENSE COVERAGE
BPM 2103         10-08   CAP ON LOSSES-CERTIFIED ACTS-TERRORISM
BPM 3105         12-07   CONTRACTORS EXTENSION ENDORSEMENT
BPM 3107CW       06-13   EPLI COVERAGE ENDORSEMENT
BPM 3110         12-07   EXCLUSION-EXT INSULATION-FINISH SYSTEMS
BPM 3112         12-07   AMENDMENT-AGGREGATE LIMITS-PER PREMISES
BPM 3113         12-07   LTD PERSONAL PROP & LOST KEYS OF OTHERS
BPM D 3107CW     06-13   EPLI COVERAGE ENDOR - SUPPLEMENTAL DEC
BPM 5122         06-13   PENNSYLVANIA CHANGES
BP 01 42         01-06   PENNSYLVANIA CHANGES
BP 01 91         07-02   PENNSYLVANIA NOTICE
BP 04 17         07-02   EMPLOYMENT-RELATED PRACTICES EXCLUSION
BP 04 54         01-06   NEWLY ACQUIRED ORGANIZATIONS
BP 04 97.        01-06   WAIVER OF TRANSFER RIGHTS
BP 05 17         01-06   EXCLUSION-SILICA OR SILICA-RELATED DUST
BP 05 65         01-07   COND EXCL-NUC/BIO/CHEM (DISP TRIA 2002)
BP 05 77         01-06   FUNGI OR BACTERIA EXCLUSION (LIABILITY)
BP 05 98         01-06   AMENDMENT-INSURED CONTRACT DEFINITION
BP 06 07         05-11   PENNSYLVANIA CHANGES - DEFENSE COST
BP 07 02         07-02   AMENDMENT-AGGREGATE LIMITS(PER PROJECT)
```

### INLAND MARINE FORMS AND ENDORSEMENTS

```
BPM D IM         12-07   INLAND MARINE DECLARATIONS
BPM 4100         12-07   CONTRACTORS INLAND MARINE ENDORSEMENT
64-N548          10-08   CONTRACTORS EQUIPMENT SCHEDULE
64-8767          01-08   CONTRACTORS EQUIPMENT COVERAGE-SPECIAL
64-N554          05-92   INSTALLATION COVERAGE - SPECIAL FORM
64-N647          01-93   INLAND MARINE REPLACEMENT COST ENDT
CM 00 01         09-04   COMMERCIAL INLAND MARINE CONDITIONS
IL 00 17         11-98   COMMON POLICY CONDITIONS
IL 01 66         09-07   PENNSYLVANIA CHANGES-ACTUAL CASH VALUE
IL 01 72         09-07   PENNSYLVANIA CHANGES
IL 02 46         09-07   PA CHANGES-CANCELLATION AND NONRENEWAL
IL 09 10         07-02   PENNSYLVANIA NOTICE
```

### POLICYHOLDER NOTICES

```
64-5960          10-06   PRIVACY NOTICE
64-8162          01-08   POLICYHOLDER DISCL. NOTICE - TERRORISM
60-N180          09-11   MSAA PARTICIPATION CLAUSE
```

**FORM-SCHED 1207**

CERTIFIED POLICY COPY

8/1/2017 2:31:39 PM

2014 POLICY 05

BUSINESSOWNERS
BPM N 3 1207

# IDENTITY THEFT RESOLUTION SERVICES

Identity theft is the fastest growing crime in the United States. In the event that you become a victim, you can now use our free identity theft resolution service provided by Identity Theft 911®, the premier identity theft resolution service provider in the United States. These services are available because your policy includes **Identity Theft Expense Coverage** at no additional cost and provides coverage to you as a business owner of a Sole Proprietorship, or in the case of a Limited Liability Company (LLC), Corporation (Inc.), Limited Liability Partnership (LLP) or any legal equivalent, the President, Main Principal or Senior Partner(s).

As part of the identity theft resolution service, if you become a victim of identity theft and need help safeguarding your personal information, a personal advocate at Identity Theft 911 will be assigned to work one-on-one with you – from the first call through crisis resolution.  Your personal advocate can take care of any activity that can legally be handled by a third party.

**Identity theft resolution service also provides:**

- ✓ Systematic notification to credit bureaus, creditors and collectors, government agencies and relevant parties.

- ✓ Preparation of all documents and phone calls needed to resolve your identity theft, including placing fraud alerts.

- ✓ Direct assistance with filing a police report – plus a comprehensive case file to assist law enforcement and claims handling.

- ✓ Federal Trade Commission fraud victim affidavit is created on your behalf by the personal advocate.

- ✓ Three-in-one credit report and ongoing credit monitoring.

- ✓ Optional credit file freezes and interfaces with state identity theft passport programs (where available).

- ✓ Ongoing fraud monitoring of more than 1,000 databases (including Department of Motor Vehicles) to identify fraudulent use of your stolen identity.

- ✓ Full year of active follow-up, commencing on the date the case is determined to be closed, to judge the effectiveness of the crisis resolution.

---

Our **Identity Theft Expense Coverage (BPM 2102 12 07)** provides up to **$15,000** of insurance coverage to pay for the expenses incurred by you as the result of identity theft.

Coverage highlights include:

- ✓ Lost wages as a result of time away from work.
- ✓ Costs for notarizing affidavits or similar documents.
- ✓ Loan application fees when reapplying for loans initially rejected solely due to incorrect credit information.
- ✓ Postage, phone and shipping fees.
- ✓ Certain legal fees to defend lawsuits brought against you as a result of identity fraud.

THIS NOTICE DOES NOT PROVIDE COVERAGE NOR DOES THIS NOTICE REPLACE ANY PROVISIONS OF YOUR POLICY.  IF THERE IS ANY CONFLICT BETWEEN THE POLICY AND THIS NOTICE,  **THE PROVISIONS OF THE POLICY SHALL PREVAIL.**

CERTIFIED POLICY COPY

8/1/2017 2:31:40 PM

2014 POLICY 06

BUSINESSOWNERS
BPM N 2 1207

# QUICK REFERENCE GUIDE
## Businessowners Coverage Form
### Section II -- Liability, Section III -- Common Conditions

**SECTION II - LIABILITY**

**A. COVERAGES   1**

  1. Business Liability and
     Supplementary Payments

  2. Medical Expenses

**B. EXCLUSIONS   3**

  1. Applicable to Business Liability

  2. Applicable to Medical Expenses

  3. Applicable to Both Business Liability
     and Medical Expenses Coverage
     – Nuclear Energy Liability Exclusion

**C. WHO IS AN INSURED   10**

**D. LIABILITY AND MEDICAL EXPENSES
LIMITS OF INSURANCE   11**

**E. LIABILITY AND MEDICAL EXPENSES
GENERAL CONDITIONS   12**

**F. LIABILITY AND MEDICAL EXPENSES
DEFINITIONS   12**

**SECTION III – COMMON POLICY
CONDITIONS**

**A – CANCELLATION   1**

**B – CHANGE   1**

**C – CONCEALMENT, MISREPRESENTATION
OR FRAUD   1**

**D – EXAMINATION OF YOUR BOOKS AND
RECORDS   2**

**E – INSPECTIONS AND SURVEYS   2**

**F – INSURANCE UNDER TWO OR MORE
COVERAGES   2**

**G – LIBERALIZATION   2**

**H – OTHER INSURANCE   2**

**I – PREMIUMS   2**

**J – PREMIUM AUDIT   2**

**K – TRANSFER OF RIGHTS OF RECOVERY
AGAINST OTHERS TO US   3**

**L – TRANSFER OF YOUR RIGHTS AND
DUTIES UNDER THIS POLICY   3**

CERTIFIED POLICY COPY

8/1/2017 2:31:41 PM

2014 POLICY 07

BUSINESSOWNERS
BPM P 2 1207

# BUSINESSOWNERS COVERAGE FORM

### SECTION II – LIABILITY

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Form the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

In Section **II** – Liability, the word "insured" means any person or organization qualifying as such under Paragraph **C.** Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to I –Paragraph **F.** Liability And Medical Expenses Definitions in Section **II** – Liability.

## A. Coverages

### 1. Business Liability

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury", to which this insurance does not apply. We may at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Paragraph **D.** – Liability And Medical Expenses Limits Of Insurance in Section **II** – Liability; and

(2) Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements or medical expenses.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Paragraph **f.** Coverage Extension – Supplementary Payments.

b. This insurance applies:

(1) To "bodily injury" and "property damage" only if:

(a) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(b) The "bodily injury" or "property damage" occurs during the policy period; and

(c) Prior to the policy period, no insured listed under Paragraph **C.1.** Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known before the policy period.

(2) To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **C.1.** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **C.1.** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

Includes copyrighted material of ISO, Inc. with permission.

CERTIFIED POLICY COPY

8/1/2017 2:31:42 PM

2014 POLICY 08

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

f. **Coverage Extension — Supplementary Payments**

(1) We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

(a) All expenses we incur.

(b) Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which Business Liability Coverage for "bodily injury" applies. We do not have to furnish these bonds.

(c) The cost of bonds to release attachments, but only for bond amounts within our Limit of Insurance. We do not have to furnish these bonds.

(d) All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

(e) All costs taxed against the insured in the "suit".

(f) Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

(g) All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the limit of liability.

(2) If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

(a) The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

(b) This insurance applies to such liability assumed by the insured;

(c) The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

(d) The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

(e) The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

(f) The indemnitee:

(i) Agrees in writing to:

i. Cooperate with us in the investigation, settlement or defense of the "suit";

ii. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

iii. Notify any other insurer whose coverage is available to the indemnitee; and

iv. Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(ii) Provides us with written authorization to:

i. Obtain records and other information related to the "suit"; and

ii. Conduct and control the defense of the indemnitee in such "suit".

Includes copyrighted material of ISO, Inc. with permission.    BPM P 2 1207

CERTIFIED POLICY COPY

8/1/2017 2:31:43 PM

2014 POLICY 09

(3) So long as the conditions in Paragraph **(2)** are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **B.1.b.(2)** Exclusions in Section II – Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the Limits of Insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

(a) We have used up the applicable Limit of Insurance in the payment of judgments or settlements; or

(b) The conditions set forth above, or the terms of the agreement described in Paragraph **(2)(f)** above are no longer met.

2. **Medical Expenses**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(a) The accident takes place in the "coverage territory" and during the policy period;

(b) The expenses are incurred and reported to us within one year of the date of the accident; and

(c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the Limits of Insurance of Section II – Liability. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

B. **Exclusions**

1. **Applicable To Business Liability Coverage**

This insurance does not apply to:

a. **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c. **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

CERTIFIED POLICY COPY

8/1/2017 2:31:43 PM

2014 POLICY 10

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

    **(a)** Employment by the insured; or

    **(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

    **(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

        **(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

        **(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

        **(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

    **(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

    **(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

        **(i)** Any insured; or

        **(ii)** Any person or organization for whom you may be legally responsible; or

    **(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

Includes copyrighted material of ISO, Inc. with permission.

BPM P 2 1207

CERTIFIED POLICY COPY

8/1/2017 2:31:44 PM

2014 POLICY 11

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants";

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement or such claim or "suit" by or on behalf of a governmental authority.

### g. Aircraft, Auto Or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 51 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

CERTIFIED POLICY COPY

8/1/2017 2:31:45 PM

2014 POLICY 12

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

   (a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where it is licensed or principally garaged; or

   (b) The operation of any of the following machinery or equipment:

     (i) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

     (ii) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition or stunting activity.

**i. War**

"Bodily injury", "property damage" or "personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these.

**j. Professional Services**

"Bodily injury", "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service. This includes but is not limited to:

(1) Legal, accounting or advertising services;

(2) Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

(3) Supervisory, inspection or engineering services;

(4) Medical, surgical, dental, x-ray or nursing services treatment, advice or instruction;

(5) Any health or therapeutic service treatment, advice or instruction;

(6) Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;

(7) Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

(8) Body piercing services; and

(9) Services in the practice of pharmacy.

**k. Damage To Property**

"Property damage" to:

(1) Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the "property damage" arises out of those operations; or

Includes copyrighted material of ISO, Inc. with permission.

BPM P 2 1207

CERTIFIED POLICY COPY

8/1/2017 2:31:46 PM

2014 POLICY 13

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate Limit of Insurance applies to Damage To Premises Rented To You as described in Paragraph **D.** Liability And Medical Expenses Limit Of Insurance in Section **II** – Liability.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**l. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**m. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**n. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**o. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**p. Personal And Advertising Injury**

"Personal and advertising injury":

(1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

(2) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(3) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(4) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

(5) Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

(6) Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

(7) Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

(8) Committed by an insured whose business is:

  (a) Advertising, broadcasting, publishing or telecasting;

CERTIFIED POLICY COPY

8/1/2017 2:31:46 PM

2014 POLICY 14

(b) Designing or determining content of web-sites for others; or

(c) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under Paragraph **F.** Liability And Medical Expenses Definitions.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, by itself, is not considered the business of advertising, broadcasting, publishing or telecasting.

(9) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time;

(10) With respect to any loss, cost or expense arising out of any:

(a) Request, demand or order that any insured or others test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to, or assessing the effects of, "pollutants".

(11) Arising out of an electronic chatroom or bulletin board the insured hosts, owns or over which the insured exercises control;

(12) Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

(13) Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatags, or any other similar tactics to mislead another's potential customers.

q. **Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

r. **Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

s. **Distribution Of Material In Violation Of Statutes**

"Bodily injury", "property damage", or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

(3) Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

Exclusions **c.**, **d.**, **e.**, **f.**, **g.**, **h.**, **i.**, **k.**, **l.**, **m.**, **n.** and **o.** in Section II – Liability do not apply to damage by fire to premises while rented to you, or temporarily occupied by you with permission of the owner. A separate Damage To Premises Rented To You Limit of Insurance applies to this coverage as described in Paragraph **D.** Liability And Medical Expenses Limits of Insurance in Section II – Liability.

2. **Applicable To Medical Expenses Coverage**

We will not pay expenses for "bodily injury":

a. To any insured, except "volunteer workers".

b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. To a person injured on that part of premises you own or rent that the person normally occupies.

d. To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

        Includes copyrighted material of ISO, Inc. with permission.        BPM P 2 1207

CERTIFIED POLICY COPY

8/1/2017 2:31:47 PM

2014 POLICY 15

e. To a person injured while practicing, instructing or participating in any physical exercises or games, sports or athletic contests.

f. Included within the "products-completed operations hazard".

g. Excluded under Business Liability Coverage.

3. **Applicable To Both Business Liability Coverage And Medical Expenses Coverage — Nuclear Energy Liability Exclusion**

This insurance does not apply:

a. Under Business Liability Coverage, to "bodily injury" or "property damage":

(1) With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by the Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

(a) Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

(b) The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

b. Under Medical Expenses Coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

c. Under Business Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of the "nuclear material"; if:

(1) The "nuclear material":

(a) Is at any "nuclear facility" owned by, or operated by or on behalf of, an insured; or

(b) Has been discharged or dispersed therefrom;

(2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(3) The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility"; but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

d. As used in this exclusion:

(1) "By-product material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

(2) "Hazardous properties" include radioactive, toxic or explosive properties;

(3) "Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for:

(i) Separating the isotopes of uranium or plutonium;

(ii) Processing or utilizing "spent fuel"; or

(iii) Handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

CERTIFIED POLICY COPY

8/1/2017 2:31:48 PM

2014 POLICY 16

(4) "Nuclear material" means "source material", "special nuclear material" or "by-product material";

(5) "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

(6) "Property damage" includes all forms of radioactive contamination of property;

(7) "Source material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

(8) "Special nuclear material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

(9) "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

(10) "Waste" means any waste material:

(a) Containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content; and

(b) Resulting from the operation by any person or organization of any "nuclear facility" included under Paragraphs (a) and (b) of the definition of "nuclear facility".

C. Who Is An Insured

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

(1) "Bodily injury" or "personal and advertising injury":

(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

(b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph (a) above;

(c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph (a) or (b); or

(d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

(a) Owned, occupied or used by,

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

Includes copyrighted material of ISO, Inc. with permission.          BPM P 2 1207

CERTIFIED POLICY COPY

8/1/2017 2:31:49 PM

2014 POLICY 17

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

   **(1)** With respect to liability arising out of the maintenance or use of that property; and

   **(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**D. Liability And Medical Expenses Limits Of Insurance**

**1.** The Limits of Insurance of Section **II** – Liability shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   **a.** Insureds;

   **b.** Claims made or "suits" brought; or

   **c.** Persons or organizations making claims or bringing "suits".

**2.** The most we will pay for the sum of all damages because of all:

   **a.** "Bodily injury", "property damage" and medical expenses arising out of any one "occurrence"; and

   **b.** "Personal and advertising injury" sustained by any one person or organization;

is the Liability and Medical Expenses limit shown in the Declarations. But the most we will pay for all medical expenses because of "bodily injury" sustained by any one person is the Medical Expenses limit shown in the Declarations.

**3.** The most we will pay under Business Liability Coverage for damages because of "property damage" to a premises while rented to you or in the case of fire while rented to you or temporarily occupied by you with permission of the owner is the applicable Damage To Premises Rented To You limit shown for that premises in the Declarations. For a premises temporarily occupied by you, the applicable limit will be the highest Damage To Premises Rented To You limit shown in the Declarations.

**4. Aggregate Limits**

The most we will pay for:

**a.** All "bodily injury" and "property damage" that is included in the "products-completed operations hazard" is twice the Liability and Medical Expenses limit.

**b.** All:

   **(1)** "Bodily injury" and "property damage" except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard";

   **(2)** Plus medical expenses;

   **(3)** Plus all "personal and advertising injury" caused by offenses committed;

is twice the Liability and Medical Expenses limit.

Subject to Paragraph **a.** or **b.** above, whichever applies, the Damage To Premises Rented To You Limit is the most we will pay for damages because of "property damage" to any one premises, while rented to you, or in the case of fire, while rented to you or temporarily occupied by you with permission of the owner.

The Limits of Insurance of Section **II** – Liability apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**E. Liability And Medical Expenses General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this policy.

CERTIFIED POLICY COPY

8/1/2017 2:31:49 PM

2014 POLICY 18